UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-3093(DSD/JJK

Steven B. Hoyt and Bradley A.
Hoyt, on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

v.                                                    **ORDER**

Marriott Vacations Worldwide
Corporation, Marriott Ownership
Resorts, Inc. d/b/a Marriott
Vacation Club International,
The Ritz-Carlton Hotel Company,
L.L.C., The Ritz-Carlton
Management Co., L.L.C., The
Ritz-Carlton Development Co.,
Inc., and The Ritz-Carlson Sales
Company, Inc.,

                    Defendants.


        Anne T. Regan, Esq., Charles S. Zimmerman, Esq, Bradley
        C. Buhrow, Esq. and Zimmerman Reed, PLLP, 1100 IDS
        Center, 80 South Eighth Street, Minneapolis, MN 55402,
        counsel for plaintiffs.

        Philip R. Sellinger, Esq. and Greenberg Traurig, LLP, 200
        Park Avenue, Florham Park, NJ 07932 and Courtney E. Ward-
        Reichard, Esq. and Nilan, Johnson, Lewis PA, 120 South
        Sixth Street, Suite 400, Minneapolis, MN 55402, counsel
        for defendants.


        This matter is before the court upon the motions to dismiss by

defendants.[1] Based on a review of the file, record and proceedings

---

        [1] Defendants include Marriott Vacations Worldwide Corporation,
Inc. and Marriott Ownership Resorts, Inc. doing business as
Marriott Vacation Club International (collectively, Marriott); and
the Ritz-Carlton Hotel Company, L.L.C., Ritz-Carlton Management
Co., LLC, the Ritz-Carlton Development Co., Inc. and Ritz-Carlton
                                                    (continued...)

herein, and for the following reasons, the court grants the motion in part.

## BACKGROUND

This real estate dispute arises out of the purchase of fractional interests in condominiums by plaintiffs Steven and Bradley Hoyt (collectively, plaintiffs).  In 2003, Steven Hoyt purchased a fractional interest in a condominium at the Ritz-Carlton Bachelor Gulch resort in Beaver Creek, Colorado (Bachelor Gulch).  Am. Compl. ¶ 1.  That same year, Bradley Hoyt purchased a fractional interest at the Ritz-Carlton Aspen Highlands resort in Aspen, Colorado (Aspen Highlands).  Id. ¶ 2, 24.  Purchasers of fractional interests, including plaintiffs, are required to pay condominium association fees.  Id. ¶ 42.

The fractional interest purchased by Steven Hoyt entitled him to use of his Bachelor Gulch unit for 21 days each year.  Id. ¶ 5. Bradley Hoyt's fractional interest entitled him to 28 days of use per year at Aspen Highlands.  Id. ¶ 6.  Through an exchange program (Membership Program), plaintiffs could each exchange their usage for days at another resort.[2]  Id.

---

(...continued)
Sales Co., Inc. (collectively, Ritz-Carlton).  The court refers to Marriott and Ritz-Carlton collectively as "defendants."

[2] At the time of their purchase, plaintiffs could exchange their usage for stays in Winding Bay, the Bahamas (Winding Bay); (continued...)

The plaintiffs signed contracts (Purchase Agreements) memorializing their purchases. Marx Decl. Exs. A(1)-(2). The Purchase Agreements incorporate by reference several other agreements - namely, the resorts' respective Affiliation Agreements, Reservation Procedures Agreements and Declarations of Condominium.[3]  See id. Exs. B-1, B-2, C-1, C-2, D-1, D-2. By signing the Purchase Agreements, the plaintiffs acknowledged that they had received all of the incorporated documents. See, e.g., id. Ex. A-1, at ¶ 26(d).

On April 28, 2009, Ritz-Carlton announced a new membership option (Portfolio Membership), which allowed individuals to stay at Ritz-Carlton resorts without having to purchase fractional interests. Am. Compl. ¶¶ 44-46. Instead, Portfolio Members purchased points to exchange for stays at Ritz-Carlton resorts and were not obligated to pay condominium association dues or fees. Id. ¶ 47. The plaintiffs' fractional interests were converted to "Home Club" memberships, which Ritz-Carlton represented were identical to fractional interest ownership. Id. ¶ 45. The plaintiffs allege that the introduction of Portfolio Membership

---

(...continued)
Lake Tahoe, California; San Francisco, California; Aspen Highlands; Bachelor Gulch; Vail, Colorado; Jupiter, Florida; Kauai Lagoons, Hawaii; Kapalua Bay, Hawaii (Kapalua Bay); and St. Thomas, Virgin Islands.  Am. Compl. ¶ 37.

[3] The court refers to the Purchase Agreements, Affiliation Agreements, Reservation Procedures Agreements and Declarations of Condominium collectively as the "Agreements."

3

decreased the secondary market for fractional interests, rendered the resorts less exclusive and limited their ability to reserve time at other Ritz-Carlton properties. Id. ¶¶ 47-48, 52, 64, 69.

In July 2012, Ritz-Carlton announced that Winding Bay and Kapalua Bay would no longer be affiliated with the Membership Program. Id. ¶ 13. That same month, Ritz-Carlton affiliated with Marriott Vacation Club Destinations (MVC) resorts, allowing MVC members to use points to access Ritz-Carlton resorts. Id. ¶ 56.

On March 19, 2013, the plaintiffs filed an amended complaint, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and claims under the state consumer protection statutes of California, Florida, Colorado and Hawaii. The plaintiffs also seek a declaratory judgment that defendants' conduct was unlawful. Defendants move to dismiss.

## DISCUSSION

### I.   Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  <u>Iqbal</u>, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  <u>See</u> Fed. R. Civ. P. 12(d).  The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." <u>See</u> <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  In this case, the Purchase Agreements are necessarily embraced by the pleadings, and the Affiliation Agreements, Reservation Procedures Agreements and Declarations of Condominium are incorporated into the Purchase Agreements and are properly considered.[4]

---

[4] The plaintiffs argue that only the Purchase Agreements should be considered at this stage, as they are the only agreements referenced in the Amended Complaint.  The Purchase Agreements, however, explicitly incorporate and cross-reference the other agreements. <u>See</u> Marx Decl. Ex. A-1, at ¶ 11 ("Purchaser agrees to abide by the rules, regulations and restrictions imposed upon
(continued...)

## II.  Choice of Law

In diversity cases, the court applies "the choice of law principles of the state in which the district court is located." Highwood Props., Inc. v. Exec. Risk Indem., Inc., 407 F.3d 917, 920 (8th Cir. 2005) (citation omitted).  Minnesota courts generally enforce the parties' agreement regarding choice of law, absent evidence that the agreement was made in bad faith or in an attempt to evade the law of Minnesota.  Hagstrom v. Am. Circuit Breaker Corp., 518 N.W.2d 46, 48 (Minn. Ct. App. 1994); see Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980). Here, the Purchase Agreements state: "Th[ese] Agreement[s] shall be governed by, and shall be construed in accordance with, the laws of the State of Colorado."  E.g., Marx Decl. A-1 at ¶ 27.  There is no evidence of bad faith or any attempt to evade the law of Minnesota. As a result, the court applies the substantive law of Colorado.

---

(...continued)
Purchaser by the Membership Program, including the Reservation Procedures...."); id. at ¶ 26(d) (acknowledging receipt of Reservation Procedures, Affiliation Agreement and Declaration of Condominium); id. at ¶ 31 ("Purchaser acknowledges that Purchaser has had the opportunity to review and understand all documents referenced in this Agreement.").  As a result, all of the Agreements are properly considered at this stage of the proceedings.  See Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F. Supp. 1148, 1152 (D. Minn. 1997) (noting that at the motion-to-dismiss stage, court may consider "the policies themselves, and all documents they incorporate by reference" (citation omitted)).

## III.   Breach of Contract

Plaintiffs first argue a claim for breach of contract against defendants The Ritz-Carlton Development Co., Inc. and The Ritz-Carlton Sales Company, Inc.  Under Colorado law, courts interpret contracts "in a manner that best effectuates the intent of the parties ... by looking to the plain language of the agreement." Allen v. Pacheco, 71 P.3d 375, 378 (Colo. 2003) (en banc) (citations omitted).  Courts "will enforce the agreement as written unless there is an ambiguity in the language."  Id. (citation omitted).  A contractual provision "is ambiguous if it is fairly susceptible to more than one interpretation."  Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371, 374 (Colo. 1990) (en banc) (citation omitted).  "In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions."  Id. (citation omitted).  "When several documents are part of a single transaction, they should be read together as a whole, not in isolation, to determine the parties' intent."  Bledsoe Land Co. LLLP v. Forest Oil Corp., 277 P.3d 838, 842 (Colo. App. 2011) (citation omitted).

Under Colorado law, a claim for breach of contract requires (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform

7

the contract by the defendant and (4) resulting damages to the plaintiff. W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992) (en banc).  Here, the plaintiffs allege that defendants breached the contract by (1) introducing the Portfolio Membership option, (2) permitting MVC members to access Ritz-Carlton properties through MVC's affiliation with the Membership Program and (3) removing the Winding Bay and Kapalua Bay resorts from the properties available to Membership Program participants. Defendants argue that the plaintiffs cannot state a claim for breach of contract because each of the actions that the plaintiffs characterize as breach of contract were expressly permitted by the Agreements.[5]

### A.    Portfolio Membership

The plaintiffs first argue that the creation of Portfolio Membership breached the Purchase Agreements.  Specifically, the plaintiffs argue that the Purchase Agreements only allowed owners of fractional interests - and not Portfolio Members - to participate in the Membership Program. See, e.g., Marx Decl. Ex. A-1, at ¶ 11 ("Pursuant to the Declaration and the Affiliation Agreement, membership in the [Ritz-Carlton Club] Membership Program

---

[5] Defendants argue that any claim based on the introduction of Portfolio Membership is time-barred.  The court need not reach this argument, however, because the allegations based on Portfolio Membership fail to state a claim for breach of contract.

is an appurtenance to each Residence interest in the Condominium and may not be partitioned therefrom.").

Defendants respond that such a reading would nullify the portion of the Agreements expressly providing for individuals other than fractional owners to participate in the Membership Program. The court agrees.  The Affiliation Agreements include provisions relating to Associate Members - those "having privileges within the Membership Program through a separate category of membership other than that type of membership associated with ownership of a Residence Interest."  E.g., Marx Decl. D-1, at 2.  Further, the Agreements provide that such members may - at the discretion of defendants - be added in the future.  See, e.g., id. at ¶ 5.2 ("The Membership Program Documents will only be ... amended in a manner that in the Program Manager's reasonable business judgment will be for the principal purpose of improving upon the quality and operation of the Membership Program ... and furthering the collective enjoyment of the Membership Program by present and future members (including Associate Members) as a whole.").  As a result, because the Agreements expressly contemplate the addition of non-owner Associate Members to the Membership Program, the plaintiffs' allegations related to such changes cannot state a

claim for breach of contract,[6] and dismissal of the breach of contract claim relating to Portfolio Membership is warranted.

**B.   Deletion of Resorts**

The plaintiffs next allege that defendants breached the Purchase Agreements by removing Winding Bay and Kapalua Bay from the Membership Program.  The Purchase Agreements provide, however, that "[t]he Program Manager has reserved the right from time-to-time to affiliate additional resorts or delete existing resorts in participating in the Membership Program.  Purchasers should refer to the Affiliation Agreement ... for details concerning the addition or deletion of resorts." E.g., Marx Decl. Ex. A-1, at ¶ 13.  The Affiliation Agreements provide that the Program Manager may delete existing clubs "due to casualty where any of the affected accommodations or facilities are not reconstructed or replaced," id. Ex. D-1, at ¶ 7.3(b), or "where an eminent domain action has taken place," id. at ¶ 7.3(c).  Further, the Agreements provide that the "Program Manager may, in its sole discretion,

---

[6] Defendants also argue that this discretion to add Associate Members expressly allowed them to affiliate with MVC.  The court agrees.  The discretion to add Associate Members to the Membership program, coupled with the Affiliation Agreements' pronouncement that "[t]he Program Manager may, in its sole discretion, create a separate membership program," e.g., Marx Decl. Ex. D-1, at ¶ 7.2(b), leads the court to conclude as a matter of law that such an affiliation was contemplated and allowed by the governing documents.  As a result, the plaintiffs cannot state a claim for breach of contract based on the affiliation with MVC, and dismissal of the portion of the claims related to such affiliation is warranted.

delete an existing Member Club ... pursuant to the specific termination rights contained in the applicable agreement pursuant to which the location became affiliated with the Membership Program." Id. at ¶ 7.3(d).

Defendants argue that ¶ 7.3(d) is a catch-all provision that allows the Program Manager, at its discretion, to delete a resort for any reason. This argument is unavailing. The provision at issue expressly limits the scope of deletion rights, stating that such deletion must occur "pursuant to the specific termination rights contained in" the affiliation agreements for Winding Bay and Kapalua Bay. E.g., id. Such documents are not before the court at this stage in the proceedings. As a result, defendants cannot demonstrate that deletion of the resorts was expressly allowed by the Agreements. Therefore, at this stage of the proceedings, plaintiffs have sufficiently pleaded a plausible claim for breach of contract based on the deletion of resorts, and dismissal of this portion of the claim is not warranted.[7]

---

[7] Alternatively, defendants argue that dismissal is warranted because the plaintiffs cannot plausibly allege damages. Specifically, defendants argue that the Purchase Agreements note that the "Purchaser is purchasing a Residence Interest for the personal use of Purchaser and Purchaser's family members and guests only, and with no expectation of deriving any profit or tax advantage therefrom whether through income, appreciation or otherwise." E.g., Marx Decl. Ex. A-1, at ¶ 19. Defendants argue that, given this clause, the plaintiffs may not seek damages for the diminution in value of their fractional interests. Plaintiffs' request for relief, however, is not explicitly limited to the diminution in the value of their fractional interests. See Am.
(continued...)

IV.  **Good Faith and Fair Dealing**

The plaintiffs next allege that defendants breached the
implied covenant of good faith and fair dealing.  Specifically, the
plaintiffs argue that defendants had unfettered discretion to alter
the terms of the Membership Program and exercised that discretion
in bad faith.  Colorado "recognizes that every contract contains an
implied duty of good faith and fair dealing." Amoco Oil Co. v.
Ervin, 908 P.2d 493, 498 (Colo. 1995) (en banc) (citations
omitted).  However, "in the contractual context, the implied
covenant is quite narrow, and applies only when the manner of
performance under a specific contract term allows for discretion on
the part of either party." FDIC v. Fisher, 292 P.3d 934, 939
(Colo. 2013) (Eid, J., concurring) (citation and internal quotation
marks omitted).  "Discretion in performance occurs when the
parties, at formation, defer a decision regarding performance terms
of the contract leaving one party with the power to set or control
the terms of performance after formation." City of Golden v.
Parker, 138 P.3d 285, 292 (Colo. 2006) (en banc) (citation and
internal quotation marks omitted).

---

(...continued)
Compl. at Prayer for Relief (requesting "damages, as provided by
law, determined to have been sustained as to each of them", or
alternatively be permitted to rescind their purchase contracts").
If plaintiffs are ultimately successful on a breach of contract
claim, such a broad contractual provision does not necessarily
foreclose potential recovery of damages.  As a result, dismissal of
the breach of contract claim on these grounds is not warranted.

Defendants argue that the implied covenant of good faith does not apply to their management of the Membership Program. The court agrees. The implied covenant of good faith and fair dealing generally only applies in situations where parties do not specify essential contractual terms "such as quantity, price, or time." Ervin, 908 P.2d at 498 (citations omitted). Here, the plaintiffs have not alleged that the parties deferred decisions on the terms of the contract. Further, the contractual terms at issue are ancillary rather than essential. Moreover, as already explained, a valid contract explicitly addressed the challenged actions, and "the duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions." Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc., 872 P.2d 1359, 1363 (Colo. App. 1994). As a result, the plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, and dismissal of that claim is warranted.

**V.   Unjust Enrichment**

The plaintiffs next allege a claim for unjust enrichment. In Colorado, "[t]he claim of unjust enrichment is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008) (citation omitted). "[I]t is an equitable remedy and

does not depend on any contract, oral or written." <u>Id.</u> (citation omitted). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." <u>Id.</u> (citation omitted).

A plaintiff generally may not plead a claim for unjust enrichment "when an express contract covers the same subject matter because the express contract precludes any implied in-law contract." <u>Bedard v. Martin</u>, 100 P.3d 584, 592 (Colo. App. 2004) (citation omitted). The plaintiffs respond that the instant matter presents an exception because "the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." <u>Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.</u>, 77 P.3d 814, 816 (Colo. App. 2003) (citation omitted). Specifically, the plaintiffs allege that defendants (1) instituted the points-based Portfolio Membership, (2) affiliated with MVC, (3) removed Winding Bay and Kapalua Bay from the Membership Program and (4) promoted Portfolio Membership rather than fractional ownership. Am. Compl. ¶ 92. As already explained, however, the Agreements explicitly address these issues, meaning that plaintiffs' allegations of unjust enrichment concern

contractual, rather than extra-contractual, matters.  As a result, dismissal of the claim for unjust enrichment is warranted as to those defendants who were parties to the Purchase Agreement.[8]

## IV. Consumer Protection Statutes

The plaintiffs next allege state consumer protection claims under (1) the California Unfair Competition Law (UCL), (2) the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), (3) the Colorado Consumer Protection Act (CCPA) and (4) the Hawaii Uniform Deceptive Trade Practices Act (HUDTPA).  Specifically, the plaintiffs allege that defendants have committed consumer fraud by (1) marketing the fractional interest as an alternative to traditional timeshares, (2) representing that future owners would be able to enjoy the same benefits and privileges as the plaintiffs, (3) representing that Home Club residence interests would be identical to fractional ownership and (4) introducing Portfolio Membership which allegedly transformed the fractional ownership into a traditional timeshare.  Id. ¶¶ 38, 40, 45, 48.

---

[8] Several defendants against whom the claim for unjust enrichment is pleaded, however, were not parties to the Agreements. As a result, the conclusion that the existence of an applicable contract bars an unjust enrichment claim does not apply to these defendants. See MidCities Metro. Dist. No. 1 v. U.S. Bank Nat'l Ass'n, No. 12-cv-03322-LTB, 2013 WL 3200088, at *8 (D. Colo. June 24, 2013) (allowing unjust enrichment claim to proceed against a defendant that was "not a party to the applicable express contract").  As a result, dismissal of the unjust enrichment claim against Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc., Ritz-Carlton Hotel Company, LLC, and the Ritz-Carlton Management Company, LLC is not warranted.

Defendants respond that such allegations are not pleaded with particularity under Rule 9(b), as required by each of the statutes.[9]  The requirements of Rule 9(b) are read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case.  <u>Schaller Tel. Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 746 (8th Cir. 2002) (citation and internal quotation marks omitted).  However, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  <u>Id.</u> (citation and internal quotation marks omitted).  To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, where, when, and how" of an alleged fraud.  <u>United States ex rel. Joshi v. St. Luke's Hosp., Inc.</u>, 441 F.3d 552, 556 (8th Cir. 2006) (citation and internal quotation marks omitted).  In other words, a plaintiff must plead "the time, place and contents of false representations, as well as the identity of the person making the

---

[9] Where, as here, state consumer protection claims sound in fraud, Rule 9(b)'s heightened pleading requirements apply.  <u>See Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL); <u>Mattos v. Laurus Funding Grp., Inc.</u>, No. 11-00275, 2013 WL 253483, at *7 (D. Haw. Jan. 23, 2013) (applying Rule 9(b) to HUDTPA); <u>Blair v. Wachovia Mortg. Corp.</u>, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[W]here the gravamen of the [FDUTPA] claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply."); <u>Duran v. Clover Club Foods Co.</u>, 616 F. Supp. 790, 793 (D. Colo. 1985) (applying Rule 9(b) to CCPA claim).

16

misrepresentation and what was obtained or given up thereby." <u>BJC</u>
<u>Health Sys. v. Columbia Cas. Co.</u>, 478 F.3d 908, 917 (8th Cir. 2007)
(citation and internal quotation marks omitted).

Here, the allegations of consumer fraud fall far short of Rule
9(b)'s particularity requirements.   The plaintiffs have not
specifically identified who made the allegedly fraudulent
statements, nor have they identified the particular marketing
statements and material at issue.   <u>See</u> <u>id</u>.   Moreover, the
plaintiffs do not differentiate between the six defendants when
identifying the allegedly fraudulent statements.   <u>See, e.g.</u>, Am.
Compl. ¶¶ 38, 40 (noting "Defendants' marketing of the owner-member
aspect of the Club").   Such group pleading is not sufficient under
Rule 9(b).   <u>See</u> <u>Moua v. Jani-King of Minn., Inc.</u>, 613 F. Supp. 2d
1103, 1112 (D. Minn. 2009) ("[W]hen a complaint accuses multiple
defendants of participating in the scheme to defraud, the plaintiff
must take care to identify which of them was responsible for the
individual acts of fraud." (citation and internal quotation marks
omitted)).   As a result, the plaintiffs have failed to plead their
state consumer law claims with particularity, and dismissal is
warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motion to dismiss [ECF No. 45] by defendants The Ritz-Carlton Development Company, Inc. and The Ritz-Carlton Sales Company, Inc. (Contracting Defendants) is granted in part, consistent with this order;

2.    The motion by Contracting Defendants to dismiss the breach of contract claim based on Portfolio Membership and the MVC affiliation is granted;

3.    The motion by Contracting Defendants to dismiss the breach of contract claim based on resort deletions is denied;

4.    The motion by Contracting Defendants to dismiss the breach of the implied covenant of good faith and fair dealing claim is granted;

5.    The motion by Contracting Defendants to dismiss the unjust enrichment claim is granted;

6.    The motion by Contracting Defendants to dismiss the state consumer protection claims is granted;

7.    The motion to dismiss [ECF No. 51] by defendants Marriott Vacations Worldwide Corporation, Marriott Ownership Resorts, Inc. d/b/a Marriott Vacation Club International, The Ritz-Carlton Hotel Company, L.L.C., and The Ritz-Carlton Management Co., L.L.C. (Non-Contracting Defendants) is granted in part, consistent with this order;

18

8.    The motion by Non-Contracting Defendants to dismiss the unjust enrichment claim is denied;

9.    The motion by Non-Contracting Defendants to dismiss the state consumer protection claims is granted.


Dated:  February 7, 2014

                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court